UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| RICHARD SLUSHER, D.O., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SHELBYVILLE HOSPITAL CORPORATION ) <br> d/b/a HERITAGE MEDICAL CENTER and ) <br> DAN BUCKNER, individually, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES the Plaintiff, Richard Slusher, D.O., by and through his attorneys, Rhode & Jackson, P.C. and Evans Harrison Hackett, PLLC and complains against Defendants, Shelbyville Hospital Corporation d/b/a Heritage Medical Center and Dan Buckner, individually, as follows:

### NATURE OF THE ACTION

1. This is an action to correct and remedy wrongful discharge of and retaliation by Defendants against Plaintiff in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") 38 U.S.C. §§ 4301 *et seq.*; and common law actions for breach of contract and intentional infliction of emotional distress.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 in that the state law counts herein are closely related to and arise from the same operative facts that create this Court's original federal question jurisdiction such that they form part of the same case or controversy.

Page 1 of 11

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) and (b), in that all or substantially all of the events or omissions giving rise to the claims occurred in the Eastern District of Tennessee.

4. On October 19, 2011, Plaintiff filed a USERRA complaint with the Veterans' Employment and Training Service ("VETS") and on December 9, 2011 received a finding that his claims are meritorious. A copy of each is attached hereto jointly as Exhibit A.

## PARTIES

5. At all times relevant herein, Plaintiff Richard M. Slusher, D.O. ("Slusher") permanently resided and continues to reside in North Carolina.

6. At all times relevant herein, Defendant Shelbyville Hospital Corporation d/b/a Heritage Medical Center ("HMC") was and is located at 4000 Meridian Boulevard in Franklin, Tennessee.

7. At all times relevant herein, Dan Buckner ("Buckner") was Chief Executive Officer ("CEO") of HMC.

8. At all times relevant hereto, Slusher was employed by HMC.

9. HMC is an employer under USERRA. 38 U.S.C. § 4303(4)(A); 20 C.F.R. § 1002.5(d)(1).

10. Buckner is an employer under USERRA. 38 U.S.C. § 4303(4)(A)(i); 20 C.F.R. § 1002.5(d)(1)(i).

## GENERAL FACTS

11. Slusher signed an Employment Agreement ("Contract") with HMC on or about January 26, 2011; a copy of which is attached hereto as Exhibit B.

12. Buckner executed the Contract with Slusher on behalf of HMC.

13. Slusher began his employment with HMC on February 28, 2011.

14. Slusher was employed for a term of one (1) year as an orthopaedic surgeon with an annual salary of $450,000.00 (Four Hundred Fifty Thousand Dollars).

15. Slusher's Contract provided an opportunity to earn additional compensation by electing to take additional Emergency Department on-call duties.

16. Slusher earned and planned to continue to earn additional compensation as defined under the Contract.

17. Slusher's fringe benefits to be paid by HMC included, but was not limited to, medical malpractice insurance in the amount of $1 million/$3 million (One Million/Three Million); five (5) paid Continuing Medical Education ("CME") days per year; and paid vacation.

18. Slusher enlisted in the Army in 1989, spent six (6) years on active duty and continues to this date in the Army Reserves.

19. HMC and Buckner were aware that Slusher was enlisted in the Army Reserves at the time he was hired because the parties discussed this fact when negotiating his Contract for employment.

20. On May 4, 2011, Slusher received orders that he would be deployed.

21. On May 5, 2011, Slusher verbally notified HMC, through its employees Buckner and Tisha Rader ("Rader"), Director of Physician Practice Management of his deployment.

22. On or about May 5, 2011, Slusher hand delivered a copy of his deployment orders to Rader.

23. On June 9, 2011, Slusher reported for duty at Fort Benning, Georgia.

24. On June 17, 2011, Slusher was deployed to Iraq.

25. On August 27, 2011, Slusher returned from duty to Fort Benning.

26. On September 24, 2011, Slusher was discharged from active duty.

27. On July 28, 2011, while serving in Iraq, Slusher received an email ("email") from Rader containing a termination agreement, effective the same date. A copy of the email is attached hereto as Exhibit C.

28. In the email, Rader told Slusher he had to sign and return the agreement.

29. The agreement emailed by Rader terminated Slusher's employment with HMC on October 26, 2011, regardless of when Slusher returned from active duty.

30. The termination agreement did not contain any language waiving Slusher's USERRA rights or any other employment rights.

31. Slusher did not receive consideration for termination of his Contract in accordance with the terms of his Contract.

32. Slusher, unaware of his rights under USERRA and without the benefit of legal counsel, signed the termination agreement emailed by Rader and returned it to HMC as she instructed. A copy of the signed termination agreement is attached hereto as Exhibit D.

33. Slusher was not given any reason for his termination by HMC at the time of the email.

34. On August 30, 2011, upon returning to the United States and learning of his USERRA rights, Slusher, through legal counsel, sent a letter to Buckner informing him of Slusher's rights under USERRA and Slusher's intention to report to work to HMC after being discharged from active duty. A copy of such letter is attached hereto as Exhibit E.

35. The same letter was faxed to Buckner on August 31, 2011.

36. On September 7, 2011, after receiving no response to the letter of August 30, 2011, Slusher emailed Buckner stating he was returning to work on October 3, 2011.

Page 4 of 11

Case 4:12-cv-00060-HSM-SKL   Document 1   Filed 09/06/12   Page 4 of 11   PageID #: 4

37. On September 8, 2011, Rader emailed Slusher informing him that Dr. Wayne Mosley, an orthopaedic surgeon who was hired while Dr. Slusher was stationed in Iraq, was now in his position.

38. HMC told Slusher that there were no job openings for him.

39. Despite HMC's representation of no job openings for Slusher, HMC actively solicited and recruited for an orthopaedic surgeon.

40. On September 9, 2011, Rader emailed Slusher informing him that she would respond to his reemployment notification after September 19, 2011.

41. On September 20, 2011, HMC's office manager, Shelly Dortch ("Dortch"), contacted Slusher via telephone asking several questions regarding his return to work.

42. In that telephone conversation, Dortch said there were rumors that Slusher was not returning to HMC and that he did not want to return.

43. Slusher told Dortch that he had every intention of returning and fulfilling the term of his Contract.

44. It was at this time Slusher learned that HMC had accused him of inappropriate sexual conduct with Dortch and further alleged there were unidentified patient complaints regarding his prior medical services.

45. Slusher never engaged in inappropriate sexual conduct with Dortch.

46. HMC never notified Slusher of any allegations of inappropriate sexual conduct.

47. Even Dortch denied HMC's allegations that Slusher had engaged in inappropriate sexual conduct with her.

48. Slusher never received notice of or confirmation of any patient complaints.

49. Buckner and Rader refused to even explain what alleged complaints were made, when or by whom, despite Slusher's repeated inquiries.

50. On information and belief, Defendants created false allegations to intimidate and retaliate against Slusher for asserting his rights under USERRA.

51. HMC and Buckner failed to timely respond to Slusher's August 2011 request for reinstatement.

52. On September 30, 2011 Rader finally contacted Slusher regarding reinstatement and told him to report to work on October 3, 2011, at 8:00 a.m. for a meeting with Buckner.

53. Slusher followed Rader's instructions and met with Buckner on October 3, 2011, at 8:00 a.m.

54. In the October 3, 2011 meeting Buckner told Slusher that he would be reemployed, but not in his previous position. Buckner instead told Slusher that his reemployment duties were going to be only in the Emergency Room to take calls, stock and check the equipment, and review and draft HMC policies and procedures through October 26, 2011.

55. Slusher's duties before reporting for active duty were as an orthopaedic surgeon with his own clinic and staff, treating patients in a practice setting and performing surgeries. They did not include any of the duties imposed upon him on October 3, 2011.

56. Prior to reemployment, Slusher had an office, exam rooms, staff, equipment, patient appointments and scheduled surgical procedures.

57. Defendants failed to provide an office, exam rooms, staff, equipment or patient appointments, surgical procedures or other comparable employment opportunities for Slusher to practice as an orthopaedic surgeon upon his return from active duty.

58. Despite Slusher's insistence that he did not waive his USERRA rights to seek reemployment

and that the termination agreement signed by him was void, HMC terminated Slusher on October 26, 2011, as indicated in Rader's communication sent to Slusher in Iraq. A copy of Slusher's termination letter is attached hereto as Exhibit F.

59. From October 26, 2011 to April 2012, despite his efforts, Slusher was unable to find comparable employment.

60. On November 14, 2011, Slusher accepted an active duty, short term, temporary position with the U.S. Army Reserves in Missouri as an orthopaedic surgeon where his salary and benefits were significantly less than what he earned with HMC.

61. Slusher's short term, temporary position with the U.S. Army Reserves ended on March 12, 2012.

62. Slusher ultimately found a full time position as an orthopaedic surgeon and began working on April 9, 2012, where he continues to work at present.

## COUNT I - VIOLATIONS OF USERRA BY HMC AND BUCKNER

### A. Failure to Reemploy Slusher

63. Slusher hereby incorporates paragraphs 1-62 as though fully set forth herein.

64. Slusher provided appropriate advance notice of his active duty employment, was deployed for less than five years, promptly applied for reemployment after the completion of his active duty service and was not dishonorably discharged.

65. HMC failed to reemploy Slusher in the position in which he would have been employed if his continuous employment had not been interrupted by his military service or in a position of like seniority, status, pay and benefits.

66. HMC denied Slusher his rights to reemployment and other rights that he had on the date of

commencement of his military service, plus the additional rights and benefits that he would have retained if he had remained continuously employed.

67. HMC terminated Slusher, without cause, within 180 days following his reemployment.

**B. Discrimination and Retaliation Against Slusher Because of his Military Service**

68. Slusher hereby incorporates paragraphs 1-67 as though fully set forth herein.

69. Defendants discriminated and retaliated against Slusher because he is a member of the U.S. Army Reserves, performed active duty service, took action to enforce his reemployment and other rights under USERRA and participated in a VETS investigation against HMC.

70. Defendants retaliated and discriminated against Slusher by failing to reemploy him in the position in which he would have been employed if his continuous employment had not been interrupted by his military service.

71. Defendants retaliated and discriminated against Slusher by making false allegations as a pretext to not reemploy him in the same or similar position because he exercised his protected rights to serve in the uniformed services and asserted his right to reemployment upon his return from active duty.

72. Slusher's military membership, active duty service and actions to enforce his rights under USERRA were motivating factors in HMC's refusal to reemploy him, its decision to reemploy him under less favorable terms and conditions and ultimately its decision to terminate him.

WHEREFORE, based on the foregoing, Slusher prays for relief against each Defendant, and each of them under Count I as follows:

    A.    For lost wages, bonuses, employee benefits and vacation benefits pursuant to 39

U.S.C. § 4323(d)(1)(B);

B. Liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C);

C. For attorneys' fees and expenses pursuant to 38 U.S.C. § 4323(h), and prejudgment interest; and

D. For any additional relief the court deems just and proper.

## COUNT II - BREACH OF CONTRACT BY HMC

73. Slusher hereby incorporates paragraphs 1-72 as though fully set forth herein.

74. HMC entered into an unambiguous and enforceable Contract that required HMC to employ Slusher as an orthopaedic surgeon until February 28, 2012, and to pay Slusher an annual salary of $450,000 (Four Hundred Fifty Thousand) with an option to make additional compensation at a flat rate per day.

75. The Contract required HMC to provide Slusher with medical malpractice insurance, 5 (five) paid days off for CME, worker's compensation insurance, and vacation time.

76. The Contract stated that either party could terminate with 90 (ninety) days notice to the other party or HMC could terminate Slusher immediately with no notice by compensating Slusher for the equivalent of 90 (ninety) days notice.

77. Slusher worked diligently and effectively on behalf of HMC, fulfilling his contractual obligations to perform work.

78. Slusher was ordered to report for active military duty on May 4, 2011.

79. Slusher notified HMC of his orders both verbally and in writing on May 5, 2011.

80. Slusher left for active duty on June 9, 2011, and was deployed to Iraq on June 17, 2011.

81. HMC terminated Slusher on July 28, 2011, via email with a termination agreement attached.

82. The termination agreement stated Slusher's last day of work was October 26, 2011, regardless of when he returned from active duty.

83. HMC failed to pay Slusher in accordance with the 90 (ninety) day termination provision, in breach of the Contract.

84. No consideration was given for the change in terms and conditions.

85. As a result of HMC's breach of the contract, Slusher suffered harm and loss in excess of $500,000.00.

WHEREFORE, based on the foregoing, Slusher prays for relief against HMC as follows:

A. Against HMC for actual damages for lost compensation and benefits owed to Slusher, plus interest, and costs;

B. For attorneys' fees and costs pursuant to Paragraph 20 of the Contract; and

C. For any additional relief the Court deems just and proper.

### COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY BUCKNER

86. Slusher hereby incorporates paragraphs 1-85 as though fully set forth herein.

87. Buckner falsely and recklessly alleged that Slusher engaged in inappropriate sexual conduct with Dortch.

88. Buckner knew both Slusher and Dortch denied said allegations.

89. Buckner falsely alleged that Slusher's patients complained regarding the standard of his medical services.

90. Buckner knew or acted with reckless disregard for the truth that these allegations were false in an attempt to make Slusher quit and not pursue his legal rights under USERRA and the

Contract as set out herein.

91. Buckner used these false allegations as a pretext for not reemploying and terminating Slusher.

92. As a direct and proximate result of Buckner's unlawful and willful acts, Slusher suffered and will continue to suffer humiliation, embarrassment, emotional distress, lost wages and benefits, mental anguish and anxiety, and loss of enjoyment of normal life as a consequence of these emotional injuries.

WHEREFORE, based on the foregoing, Slusher prays for relief against Buckner as follows:

A.  Against Buckner for actual and punitive damages and for costs of this suit; and

B.  For any additional relief the court deems just and proper.

Respectfully submitted,
Richard M. Slusher, D.O.

By: /s Philip B. Byrum
Philip B. Byrum
TBR No. 020360
Evans Harrison Hackett PLLC
One Central Plaza, Suite 800
835 Georgia Avenue
Chattanooga, TN 37402
Telephone: 423-648-7890
Facsimile: 423-648-7897
Email: pbyrum@ehhlaw.com

Shari R. Rhode
Illinois No. 2324598
PHV to be Filed
Rhode & Jackson, P.C.
1405 W. Main Street, P.O. Box 99
Carbondale, IL 62903
Telephone: 618-529-8092
Facsimile: 618-529-8582
Email: srhode@rhodeandjackson.com