RICHARD SLUSHER, D.O., )
)
*Plaintiff,* )
) Case No. 4:12-cv-60
v. )
) Judge Mattice
SHELBYVILLE HOSPITAL )
CORPORATION d/b/a HERITAGE )
MEDICAL CENTER, and DAN BUCKNER, )
)
*Defendants.* )
)

## ORDER

Before the Court are: (1) Defendants' Motion for Summary Judgment (Doc. 24); Plaintiff's Motion for Summary Judgment (Doc. 26); (3) Plaintiff's Motion to Dismiss Only Count III of his Complaint (Doc. 28); and (4) Plaintiff's Motion to Strike Paragraphs 7, 9 and 10 of Declaration of Tisha Rader for Failure to Comply with Rule 56(c)(4) (Doc. 31). For the reasons stated herein, Defendants' Motion for Summary Judgment (Doc. 24) will be **GRANTED**, Plaintiff's Motion for Summary Judgment (Doc. 26) will be **DENIED**, Plaintiff's Motion to Dismiss Only Count III of his Complaint (Doc. 28) will be **GRANTED** and Plaintiff's Motion to Strike Paragraphs 7, 9 and 10 of Declaration of Tisha Rader for Failure to Comply with Rule 56(c)(4) (Doc. 31) will be **DENIED**.[1]

---

[1] Plaintiff has moved to "strike" several paragraphs of Rader's Declaration as inadmissible hearsay. (Doc. 31). At the outset, the Court notes that a motion to strike was not the proper method for Plaintiff to challenge the affidavit submitted by Defendants. *See Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006) ("[A] court may strike only material that is contained in the pleadings. . . . Exhibits attached [at the] dispositive motion [stage] are not 'pleadings' within the meaning of Fed. R. Civ. P. 7(a), and are therefore not subject to a motion to strike[.]"). Instead, the Court will construe the Motion to Strike as an objection to the admissibility of Rader's Declaration for consideration on summary judgment. After reviewing the Motion, the Response, the Declaration, and the other evidence in the record, the Court finds that the Motion should be **DENIED**. The portions of Rader's declaration to which Plaintiff objects

# I.    BACKGROUND

Defendant Shelbyville Hospital Corporation, d/b/a Heritage Medical Center, ("HMC") is a hospital located in Shelbyville, Tennessee. (Doc. 24-1 at 6-7). Defendant Dan Buckner was HMC's chief executive officer from 2008 through 2013. (*Id.* at 6-11). Plaintiff Richard Slusher is a veteran Army officer and an orthopedic surgeon. (Doc. 1-3; *see* Doc. 24-2 at 2-5; Doc. 27-4 at 1).

HMC serves a small community which can support a single orthopedic surgeon. (Doc. 24-1 at 35). In 2010, HMC began searching for an orthopedic surgeon to become a permanent, full-time member of the HMC staff. (Doc. 24-1 at 14-15). While HMC was looking for a full-time orthopedic surgeon, it contracted with Weatherby Locums, Inc. ("Weatherby") to provide temporary orthopedic surgeons and also contracted with other local orthopedic surgeons to provide temporary, fill-in services at HMC. (*Id.* at 14-15, 31-32). During this time, HMC used four or five different orthopedic surgeons who provided services from a week to a month at a time. (*Id.* at 15).

Plaintiff was one of the surgeons supplied to HMC to provide temporary services as an orthopedic surgeon. (*Id.* at 31-32; Doc. 24-2 at 8). Plaintiff's initial assignment with HMC was contracted in thirty-day increments, which started on July 20, 2010 and continued through his last thirty-day appointment on October 14, 2010. (Doc. 24-2 at 12-17, 81-85). During this time, Plaintiff and his family resided in Southern Pines, North Carolina. (*See id.* at 2-3). Plaintiff had been working temporarily as an

---

do not constitute "hearsay," as they reflect Rader's own personal knowledge, rather than recounting any out-of-court statements. Further, the consideration (or exclusion) of these portions of Rader's Declaration is ultimately not of great import to the Court, given that the content is reflected in other portions of the record evidence.

orthopedic surgeon with various medical practices and as *locums tenens* with Weatherby since being discharged from active military service in 2009. (*Id.* at 7).

As HMC searched for a permanent, full-time orthopedic surgeon, Buckner asked Plaintiff "several times" if he would accept HMC's full-time orthopedic surgeon position. (Doc. 24-1 at 17-19, 35; Doc. 24-2 at 18-19). Plaintiff indicated that he was not interested in a full-time position with HMC.[2] (Doc. 24-2 at 18-19). Plaintiff did, however, agree to serve as HMC's orthopedic surgeon in a short-term capacity and entered a one-year contract to provide such services. (*Id.* at 18-19, 86-98; Doc. 24-1 at 17-20; Doc. 24-3 at 2). According to Buckner, HMC hired Plaintiff "in a bridge position for a short time period" to "bridge the gap" until HMC located an orthopedic surgeon who was willing to relocate and practice in Shelbyville, Tennessee on a permanent, full-time basis.[3] (Doc. 24-1 at 15-19).

The one-year Employment Agreement – with an effective date of February 28, 2011 and an ending date of February 28, 2012 – was executed on or about January 26, 2011.[4] (Doc. 24-2 at 86-98). The contract was for a set term of one year and did not provide for automatic or optional renewal. (*Id.*). Pursuant to the Agreement, either party could terminate Plaintiff's employment with HMC for any reason with a 90-day written notice to the other party. (*Id.*). However, HMC also had the ability to terminate

---

[2] According to Defendants, Plaintiff advised them that he was not interested in a permanent position because he intended to return to North Carolina where he resided with his family. (Doc. 24-1 at 17-19; Doc. 24-3 at 2). According to Plaintiff, he wanted to keep his "options open[.]" (Doc. 24-2 at 19).

[3] At the time Defendants hired Plaintiff, they were aware that he was in the Army reserves and could be called up for military duty. (Doc. 24-1 at 25; Doc. 24-2 at 60-61).

[4] The entire time that he worked for HMC, Plaintiff maintained temporary housing. (Doc. 24-2 at 19-20, 43-44, 62). Plaintiff rented a hotel room while serving as a *locum tenens* surgeon; when he commenced employment pursuant to his Employment Agreement, he rented a house on a month-to-month basis. (*Id.*).

3

the Employment Agreement immediately by providing Plaintiff 90-days' pay in lieu of written notice.[5]  (*Id.*).

Plaintiff was aware that, despite his one-year contract, HMC was continuing its search for an orthopedic surgeon who was willing to locate to the Shelbyville area for a permanent position as HMC's orthopedic surgeon.  (Doc. 24-1 at 28, 34-36).  On April 7, 2011, Buckner had a conversation with such a candidate – Dr. Wayne Mosley – who expressed interest in relocating to Shelbyville to accept the permanent orthopedic surgeon position at HMC.  (*Id.* at 28-30, 53-54; Doc. 24-3 at 3).

On April 20, 2011, Plaintiff received notice of his call up to active duty to serve "approximately 90 days in a theater of operations (boots on the ground)"; on May 4, 2011, Plaintiff received orders that he was being deployed.   (Doc. 24-2 at 100-05).  Plaintiff notified Buckner and HMC of his military call up and pending deployment.  (Doc. 27-2 at 58-59; Doc. 24-1 at 26-27).

On May 16, 2011, before Plaintiff was deployed, HMC entered into a "Recruitment Agreement" with Dr. Mosley which set forth the principal terms that were to be included in a future contract hiring Mosley as the permanent orthopedic surgeon at HMC.[6]  (Doc. 24-1 at 39-41, 47, 51).  Plaintiff was aware that HMC was in talks with Dr. Mosley prior to leaving for his deployment.  (*Id.* at 48-49, 47; Doc. 24-2 at 36-38, 57).

---

[5] "In lieu of any notice period required herein, [HMC], at [HMC's] option, may elect to terminate [Dr. Slusher] without notice and instead provide [Dr. Slusher] with a cash payment in lieu of notice, such cash payment to be equal to [Dr. Slusher's] weekly base salary multiplied by the number of weeks of notice otherwise required by this Agreement . . . ."  (Doc. 24-2 at 93).

[6]  The contract provides Mosley with a 3-year term as HMC's orthopedic surgeon with guaranteed salary for 18 months.  (Doc. 24-1 at 39-41, 47, 51).

4

HMC released Plaintiff for military leave, and he reported for his assignment on or about June 9, 2011. (Doc. 24-2 at 30-32). While Plaintiff was deployed, he and Tisha Rader, HMC's director of physicians, communicated by e-mail. (*See id.* at 34, 107-129; Doc. 24-1 at 13). In an e-mail dated July 2, 2011, Rader told Plaintiff that HMC had not yet signed a contract with Dr. Mosley. (*Id.* at 107). On July 22, 2011, Plaintiff asked Rader if Mosley had signed a contract yet because he had heard that Mosley was "going to [sign] soon." (*Id.* at 108). The next day, Rader told Plaintiff that the contract had still not been signed, as it was in the process of being negotiated and modified, noting that she felt "a little better about the deal but still have some things to negotiate." (*Id.* at 109). Later that day, Plaintiff responded, asking Rader when Dr. Mosley would start at HMC and what HMC was going to do about the 90-day notice provision in his Employment Agreement. (*Id.* at 110). Rader responded that she had been authorized to provide Plaintiff with his 90-day notice of termination. (*Id.* at 111). Plaintiff replied that he would be returning to work on October 9, 2011 and asked Rader how the 90 days would be applied to reach the end date of his employment. (*Id.*).

On July 28, 2011, Rader e-mailed Plaintiff a notice of termination in a written Termination Agreement, which set a termination date of October 26, 2011 – 90 days after the July 28, 2011 effective date. (*Id.* at 113; Doc. 27-2 at 68-69). Plaintiff acknowledged receipt and responded that he would have his attorneys look at the Termination Agreement.[7] (Doc. 24-2 at 115-16). On August 8, 2011, Plaintiff e-mailed Rader a copy of the signed Termination Agreement and indicated that he would be back at HMC on October 3, 2011 "to finish out the month." (*Id.* at 118).

---

[7] Plaintiff testified that he was ultimately unable to have his attorneys review the Termination Agreement given his deployment location and the lack of availability of his counsel. (Doc. 27-2 at 68-69, 80-81).

However, on August 30, 2011, Plaintiff's attorney, Martine Jackson, wrote a letter to Buckner and HMC's corporate employment counsel, Rhea Garrett, advising HMC of Plaintiff's rights under the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and of his intent to return to complete the full term of his contract following his discharge from active duty.[8]  (Doc. 1-6; Doc. 27-2 at 86; Doc. 27-1 at 75-76).  On September 7, 2011, Plaintiff himself e-mailed Buckner stating that he would return to work on October 3, 2011 to complete the remainder of the term specified in his Employment Agreement.  (Doc. 1-2 at 19; Doc. 27-2 at 88-90; Doc. 27-1 at 69, 87).

Plaintiff returned to work at HMC on October 3, 2011 and resumed the same duties and responsibilities that he had prior to his deployment.  (Doc. 24-2 at 48-49; Doc. 24-1 at 37, 49).  Plaintiff worked at HMC until October 26, 2011, when HMC terminated his employment pursuant to the Termination Agreement.  (Doc. 24-2 at 130).

In October 2011, Plaintiff filed a complaint with the Veterans' Employment and Training Service.  (Doc. 1-2).   After the United States Department of Labor closed its investigation, Plaintiff initiated the present action asserting claims for multiple violations of USERRA, 38 U.S.C. §§ 4301 *et seq.*, and for breach of contract.[9]  (Doc. 1). In early 2012, while this lawsuit was pending, Plaintiff began work as an orthopedic surgeon at a practice in North Carolina.  (Doc. 24-2 at 63-66).

HMC and Buckner now move for summary judgment on Plaintiff's claims, (Doc. 24), and Plaintiff has cross-moved for summary judgment (Doc. 26).

---

[8] Plaintiff testified that he first learned of his USERRA rights during a discussion with a military lawyer on August 27, 2011.  (Doc. 27-2 at 87-88).

[9] Plaintiff also raised a claim for intentional infliction of emotional distress, but he has subsequently filed an unopposed Motion to voluntarily dismiss that claim.  (Doc. 28).  The Court will **GRANT** Plaintiff's Motion to Dismiss (Doc. 28), and his claim for intentional infliction of emotional distress will be **DISMISSED WITH PREJUDICE**.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374

(6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

The standard of review when parties file cross-motions for summary judgment is the same as when only one party moves for summary judgment. *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991). When there are cross motions for summary judgment, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* In considering cross motions for summary judgment, the court is "not require[d] . . . to rule that no fact issue exists." *Begnaud v. White,* 170 F.2d 323, 327 (6th Cir. 1948).

## III.   ANALYSIS

### A.   USERRA Claims

"USERRA provides a comprehensive remedial scheme to ensure the employment and reemployment rights of those called upon to serve in the armed forces of the United States." *Hart v. Family Dental Grp.*, 645 F.3d 561, 563 (2d Cir. 2011). USERRA, which was enacted in 1994, sought to "clarify, simplify, and where necessary, strengthen the

existing veterans' employment and reemployment rights provisions."[10]  *Petty v. Metro. Gov't of Nashville-Davidson Cnty*, 538 F.3d 431, 439 (6th Cir. 2008).  With this goal in mind, USERRA has created "a floor, not a ceiling" for veterans' reemployment rights, in that "an employer may provide greater rights and benefits than USERRA requires, but no employer can refuse to provide any right or benefit guaranteed by USERRA."  20 C.F.R. § 1002.7(a).  USERRA accordingly "supersedes any . . . contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by USERRA . . . ."  20 C.F.R. § 1002.7(b).  Further, "[b]ecause USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries."  *Petty*, 538 F.3d at 439 (*quoting Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 304 (4th Cir. 2006)); *Vahey v. General Motors Co.*, 2012 WL 9390844, at *3 (D.D.C. Mar. 1, 2012) ("USERRA intentionally creates an especially high standard for employers reemploying veterans.").

> USERRA performs four key functions:
>
> First, it guarantees returning veterans a right of reemployment after military service.  38 U.S.C. § 4312.  Second, it prescribes the position to which such veterans are entitled upon their return.  38 U.S.C. § 4313.  Third, it prevents employers from discriminating against returning veterans on account of their military service.  38 U.S.C. § 4311.  Fourth, it prevents employers from firing without cause any returning veterans within one year of reemployment.  38 U.S.C. § 4316.

*Id.*  Due to previous confusion regarding the interplay of these provisions, the United States Court of Appeals for the Sixth Circuit has explained:

---

[10]  "In enacting USERRA, Congress . . . emphasized that Federal laws protecting veterans' employment and reemployment rights for the past fifty years [including the Veterans' Reemployment Rights Act ('VRRA')] had been successful and that a large body of case law that had developed under those statutes remained in full force and effect, to the extent it is consistent with USERRA."  20 C.F.R. § 1002.2  Thus, pre-USERRA case law may be considered as a guide to interpreting USERRA in certain circumstances.  *Petty*, 538 F.3d at 439.

Section 4312 protects service members at the instant of seeking reemployment, entitling the service member to reemployment in either the position she would have been had she not left for military service 'or a position of like seniority, status and pay, the duties of which the person is qualified to perform.' 38 U.S.C. § 4313(a)(2)(A) (defining rights set forth in § 4312, which entitles a person to be rehired upon return from military service). Section 4311 applies after reemployment has occurred and 'prohibits discrimination with respect to any benefit of employment against persons who serve in armed services after they return from deployment and are reemployed.' *Francis*[, 452 F.3d at 304] (noting that § 4312 protects military members up to the instant of reemployment, while other sections of USERRA, such as § 4311 and § 4316, protect the member after reemployment occurs).

*Id.* (*quoting Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 930 (8th Cir. 2007)); *Reed v. City of Charleston*, 2012 WL 1902260, at *4 (D.S.C. May 25, 2012) ("The 'apparent harshness' that an employee's protection under § 4312 culminates upon the instant of reemployment is allayed by the fact that the employee's protections under § 4311 commence at that time.").

### 1. Reemployment (38 U.S.C. § 4312)

"Section 4312 sets forth the basic right of a returning veteran to be rehired by his past employer and the basic prerequisites that the veteran must meet in order to enjoy that right." *Petty*, 538 F.3d at 440. "[A]ny person who is absent from a position of employment by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits" of USERRA as long as the statutory requirements are satisfied.[11] *See* 38 U.S.C. § 4312(a)(1)-(3). Thus, in order to be "reemployed" under USERRA, the returning service member must be provided "with both reemployment rights and employment benefits" afforded by the statute. *Francis*, 452 F.3d at 305. The reemployment rights relevant to the instant case are found in § 4313, which provides that a person whose period of uniformed service was for more than 90 days "shall

---

[11] The parties do not dispute that Plaintiff satisfied all statutory requirements to be eligible for reemployment under § 4312.

promptly be reemployed" in "the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay[.]" 38 U.S.C. § 4313(a)(2)(A). "Benefits of employment" under USERRA include

> any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues to the employee because of an employment contract, employment agreement, or employer policy, plan, or practice. The term includes rights and benefits under a pension plan, health plan, or employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or the location of employment.

20 C.F.R. § 1002.5(b); *Vahey*, 2012 WL 9390844, at *3 (noting that all of "the rights and benefits listed in the statute are substantive rights [which] relate to the employee's salary, health plan, vacation time allowance, and other elements of the employment relationship"). The effect of the benefits provisions of USERRA has been likened to an escalator, with courts noting that a service member "steps back on at the previous point he would have occupied had he kept his position continuously . . . so that he does not lose ground by reason of his absence." *See, e.g.*, *Watters v. Tilden Mining Co.*, 409 F. App'x 812, 819 (6th Cir. 2010).

Defendants argue that they complied with § 4312 because they promptly reemployed Plaintiff after his return in the same position with the same duties and the same compensation and benefits. Plaintiff, by contrast, argues that "reemployment" under §§ 4312 and 4313 "means that Slusher was to return to the position he held prior to deployment: a contract which ended on February 28, 2012." Because HMC placed him back into work with an end date of October 26, 2011, rather than February 28, 2012, Plaintiff argues that he was deprived of his USERRA right to be returned to his

previous position of continuous employment, and that Defendants therefore unlawfully deprived him of four months of employment. He also argues that Defendants were not entitled to invoke the 90-day notice provision of the Employment Agreement, given that USERRA supersedes any contractual terms that reduce or eliminate rights and benefits granted by USERRA.

The Court disagrees with Plaintiff's position that his "employment position" was a one-year contract; rather, the Court finds that Plaintiff's "employment position" was as an orthopedic surgeon for HMC. He has made no argument that he was deprived of seniority, status, or pay at the instant of his return, only that he was not permitted to complete his full contract. *See Petty*, 538 F.3d at 439 ("Section 4312 protects service members at the instant of seeking reemployment[.]"). The Court thus finds that Plaintiff was returned to his "employment position" as of October 26, 2011.

However, construing the definition of "benefits of employment" broadly in favor of the service member, the Court finds that Plaintiff was deprived of "employment benefits" as a result of the early termination of his contract. The definition of "benefits of employment" includes any "any advantage, profit, privilege, gain, status, account, or interest . . . that accrues to the employee because of an employment contract[.]" Plaintiff's employment contract dictated that he would enjoy his status as HMC's orthopedic surgeon – and all profits and privileges related thereto – through February 28, 2012. The Court finds that, in advising Plaintiff that his contract would be prematurely terminated and in executing the Termination Agreement prior to Plaintiff's return, Defendants reinstated Plaintiff with less than the "full benefits" provided by his

employment contract.[12]   Accordingly, Plaintiff was not "reemployed" under USERRA because he was not provided with the full scope of "reemployment rights and employment benefits" afforded by the statute.  *See Francis*, 452 F.3d at 305.

However, Plaintiff is not necessarily entitled to judgment on his reemployment claim simply because the Court has found that he was not reemployed.  Section 4312 sets forth several affirmative defenses to a reemployment claim.  Relevant to the instant case is the provision stating that "[a]n employer is not required to reemploy a person under this chapter if . . . the employment from which the person leaves to serve in the uniformed services is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period." 38 U.S.C. § 4312(d)(1).   The employer bears the burden of proving the applicability of the defense, 38 U.S.C. § 4312(d)(2), and the defenses are to be "construed narrowly against an employer seeking to avoid USERRA liability," *United States v. Nevada*, 817 F. Supp. 2d 1230, 1242 (D. Nev. 2011).

Defendants argue that Plaintiff's one-year contract constitutes "brief and nonrecurrent" employment, specifically noting that: (1) Plaintiff's employment "at most . . . would have lasted only until February 2012,"; (2) Plaintiff's contract was not subject to automatic renewal; (3) Plaintiff could be terminated under his contract at any time with 90-days' written notice; (4) Plaintiff was aware that Defendants were in search of a permanent surgeon to fill the position that Plaintiff was occupying under his contract;

---

[12]   To the extent that Defendants argue that he received the "full benefits" of his contract based on Defendants' compliance with the 90-day notice provision for termination, the Court notes that USERRA expressly supersedes any contractual terms that reduce, limit, or eliminate the rights afforded by USERRA.  *See* 20 C.F.R. § 1002.7(b).  While the 90-day notice is certainly relevant to Plaintiff's claim for breach of contract, and may be relevant to Plaintiff's expectations regarding his continued employment with HMC, it cannot serve as a basis for finding that Plaintiff was not entitled to the benefits of employment set forth in his contract.

13

and (5) Plaintiff was aware that his employment contract would be terminated as soon as a full-time surgeon was found. Accordingly, they argue that Plaintiff had no reasonable expectation that his employment would continue for a significant period of time, and certainly not beyond February 2012. Plaintiff argues that a one-year contract is not brief and is significant, and that, broadly construing USERRA in his favor, Defendants have not proven that they are entitled to the protection of the affirmative defense for brief, nonrecurrent employment.

"USERRA does not define 'significant period,'" nor does it define "brief," or "significant." *See* 70 Fed. Reg. 75246-01, 75262 (Dec. 19, 2005). It is well settled that the analysis of any statute "begins with the plain meaning and, if the language is unambiguous, ends there as well." *Perez v. Postal Police Officers Ass'n*, 736 F.3d 736, 740 (6th Cir. 2013); *see also Perrin v. United States*, 444 U.S. 37, 42, (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). Federal courts have an "extensive history of consulting dictionaries in defining undefined words in a statute." *Franklin v. Kellogg Co.*, 619 F.3d 604, 615 (6th Cir. 2010) (citing *MCI Telecomm. Corp. v. AT&T*, 512 U.S. 218, 225 (1994); *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 418 (1992)).

The Court will thus consider the dictionary definitions of the terms "brief," "nonrecurrent," and "significant" in analyzing the meaning of § 4312(d)(1).[13] "Brief" is defined as "short in time, duration, length, or extent." The American Heritage Dictionary of the English Language 35, 231 (4th ed. 2000) (hereinafter, "Heritage

---

[13] The parties do not dispute that Plaintiff did not believe or have any expectation that his employment with HMC would last "indefinitely"; thus, the Court will consider only whether Plaintiff had a reasonable expectation that his employment would last for a "significant period."

4th").[14]  While nonrecurrent is not itself defined, "recurrent" is defined as "occurring or appearing again or repeatedly"; thus, nonrecurrent must be that which does not occur repeatedly.  Heritage 4th at 1462.  "Significant" has two possible relevant meanings with respect to a "significant period": (1) "having or likely to have a major effect; important," and (2) "[f]airly large in amount or quantity."[15]  Heritage 4th at 1619.

While these definitions are helpful to the Court's analysis, they demonstrate that the statute contains some ambiguity with regards to which employers are entitled to the exemption from reemployment obligations found in § 4312(d)(1).  The Court thus requires additional assistance in ascertaining the meaning of this statute.  With these definitions in mind, the Court will accordingly also consider in its analysis the relevant portions of the accompanying regulations and rules from the Federal Register and the limited body of federal case law that exists regarding the affirmative defense for brief, nonrecurrent employment.

The United States District Court for the District of Nevada has previously considered the limits of the brief, nonrecurrent defense.[16]  *United States v. Nevada*, 817 F. Supp. 2d 1230 (D. Nev. 2011).   In *Nevada*, the plaintiff was hired to work as a deputy for the state Controller, who is elected for a four-year term.  *Id.* at 1234-35.  The plaintiff

---

[14]  This definition is somewhat circular, given that "short" is defined as "[l]asting a brief time."  Heritage 4th at 1610.

[15]  Plaintiff devotes much of his Motion for Summary Judgment and Response in Opposition to Defendants' Motion for Summary Judgment arguing that his position was significant because of the high salary.  Plaintiff's argument ignores the fact that significant in the statute modifies only the term "period," and not the term "position."  A USERRA plaintiff making only minimum wage could have a reasonable expectation that his employment would last for a significant period of time, and it would make his claim no less valid than the claim of Plaintiff, who makes upwards of $400,000.00 per year.  The amount of compensation that Plaintiff would have received under his full contract is thus irrelevant to the Court's instant analysis.

[16]  While the plaintiff in *Nevada* was not employed pursuant to an employment contract for a set period of time, the reasoning of the court's decision is nonetheless instructive to the Court's instant analysis.

was then called to active duty military service; while he was on leave, the Controller who hired him died, and a new Controller was subsequently elected. *Id.* Upon his return from service, the new Controller did not permit the plaintiff to return to his previous position, and ultimately, the plaintiff was not reemployed in any position. *Id.* at 1235-36.

The *Nevada* court held that the exemption for brief, nonrecurrent employment "is essentially directed at determining whether the service member should not be entitled to reemployment upon his return from service because his employment would have terminated even if he had not left for military service." *Nevada*, 817 F. Supp. 2d at 1245. It found, in other words, that this affirmative defense "focuses on the terms of employment as they were prior to the employee's departure and whether, at that time, he could have reasonably expected his employment to continue indefinitely or for a significant period of time if he were to stay." *Id.*

The state of Nevada argued that it was not required to reemploy plaintiff because of the affirmative defense for brief, nonrecurrent employment. In rejecting that argument, the court emphasized that the plaintiff "was hired on an ongoing, indefinite basis, not as a term employee . . . . There was no express or implied condition placed on [his] employment that it would terminate after a certain period of time or at the conclusion of a certain task or project or even at the conclusion of the [Controller's] term or within any period of time after the election or appointment of a new Controller." *Id.* at 1246. The court noted that the elected Controller's four-year term limit did not necessarily mean that plaintiff's employment was similarly limited, but nonetheless concluded that "a nearly four-year term can hardly be deemed 'brief[.]'" *Id.*; *see also United States v. Ala. Dep't of Mental Health & Mental Retardation*, 2010 WL 3326704

(M.D. Ala. July 27, 2010) (finding that plaintiff's employment was not "brief, nonrecurrent" given that he was a permanent employee of defendant for over 16 years). For similar reasons, the court found that the plaintiff had a reasonable expectation of continued employment, noting that it was "undisputed that [he] was hired on an ongoing basis, with nearly four years remaining on [the hiring Controller's] term and with no express or implied limitations on the term of his employment." *Id.* at 1247. Thus, the *Nevada* court found that the plaintiff's employer, the state of Nevada, had not demonstrated that the brief, nonrecurrent defense was applicable. *Id.* at 1246-47.

The comments to the final rules governing USERRA offer some additional guidance in ascertaining the parameters of this affirmative defense. In responding to a commenter who requested that the rules reflect that temporary and seasonal employment positions would not be protected by USERRA's reemployment provisions, the commentary to the rules states:

> The commenter mistakenly equates the terms "brief, non-recurrent" with "temporary" and "seasonal" when referring to employment positions. Some employment positions, such as a life guard at a swimming pool or a football coach, are temporary, seasonal positions, and such positions enjoy both the anti-discrimination/anti-retaliation and the reemployment protections afforded under USERRA. By contrast, some, but not all, temporary, seasonal employment positions are brief and non-recurrent, and provide the employee no reasonable expectation of continued employment, such as an employment contract that covers a one-time-only, three-month-long position. Such brief, non-recurrent positions enjoy the protections afforded by USERRA's anti-discrimination/anti-retaliation provisions, but are not protected by the statute's reemployment provisions.

70 Fed. Reg. 75246-01, 75249-50 (Dec. 19, 2005) (internal citations omitted).[17]

---

[17] Because the Federal Register has expressly stated that there is a distinction between "brief" employment under USERRA's affirmative defenses and "temporary" employment, the Court finds that pre-USERRA case law discussing "other than temporary" employment under the VRRA is irrelevant to the Court's current analysis.

Thus, the rules clearly state that a three-month long position is brief; case law establishes that a term of four years is not brief. The question then becomes: what is the appropriate threshold for "brief" employment between three months and four years? After careful consideration, the Court believes that a position of one year or less is "brief" under USERRA. The Court is cognizant of the fact that such a determination represents the drawing of a seemingly arbitrary line in the sand; nonetheless, our laws are replete with such lines, for everything from the legal drinking age to statutes of limitations. In making this determination, the Court has considered the 5-year limit that USERRA places on reemployment rights, as well as the fact that the average American will be a member of the work force for over 30 years before retirement. A one-year employment contract is certainly brief when compared with either of these metrics.

Based on this finding, the Court concludes that Plaintiff's one-year contract with HMC was a brief, nonrecurrent position. The contract in question was for the term of a single year. The contract would terminate automatically at the conclusion of that term, if neither party exercised their right to terminate the contract at an earlier date. It included no express or implied renewal provision, automatic or otherwise, and neither party has asserted that it was under the impression that the contract would be renewed at the end of that year. The evidence in the record demonstrates that Plaintiff's position was for a short time and would not repeat. This is the very definition of "brief, nonrecurrent."

The Court must still consider whether Plaintiff, prior to the time of his departure, had "no reasonable expectation that [his] employment w[ould] continue . . . for a significant period." The record demonstrates that Plaintiff had advised HMC prior to

18

signing his employment contract that he was not interested in becoming HMC's permanent orthopedic surgeon, and Plaintiff was aware that HMC was looking for someone to fill that position. Plaintiff was also aware of the termination provision in his employment contract, which allowed HMC to terminate the contract for any or no reason with either 90-days' notice or payment for 90-days' work. Prior to his deployment, Plaintiff was aware that HMC was in talks with another surgeon interested in taking the permanent position at HMC, further evidencing HMC's desire to fill the short-term position that Plaintiff occupied with a permanent candidate. Thus, the evidence demonstrates that, prior to Plaintiff's departure, his reasonable expectation of continued employment was 1 day to 90 days, given that HMC could give him 90-day notice of termination or terminate him immediately with 90-days' severance upon hiring a permanent candidate. Even though the 90-day notice provision in the contract may not be fully enforceable because USERRA supersedes contractual provisions that are not enforced in favor of the service member, it certainly informs the Court's analysis as to Plaintiff's expectations regarding his continued employment. The Court does not believe that 90 days is a "significant period of time," and thus finds that Plaintiff had no reasonable expectation that his employment would continue for a significant period.

Even if Plaintiff had been unaware that HMC was actively seeking his permanent replacement, the Court would nonetheless find that he had no reasonable expectation of continued employment for a significant period. At the time Plaintiff left for deployment, he had approximately nine months remaining on a twelve-month contract. Although nine months is a significant portion of a twelve-month contract, it is not, in and of itself, a "significant period" – that is, it is not an "important" or "fairly large" amount of time.

The Court finds the current situation to be easily distinguishable from *Nevada* and the hypothetical examples set forth in the rules governing USERRA. In *Nevada*, no contract existed, and the plaintiff was hired on an ongoing basis with no limitations on the term of his employment. Thus, without any indication prior to his deployment that his employment would be terminated, he had every reasonable expectation that his employment would continue for a significant period, certainly throughout the four-year term of the elected official who hired him. By contrast, Plaintiff was hired only for a single year with no expectation that his employment would continue beyond that term, was aware that his replacement was being sought, was aware that he could be terminated at any time with 90-days' pay, and was already several months into the term of his brief employment upon his deployment. Whereas the *Nevada* plaintiff had every expectation of continued employment, Plaintiff had none.

The governing rules for USERRA set forth several hypotheticals regarding the reasonable expectations of continued employment for seasonal or temporary workers which are also instructive. They note that a football coach and a lifeguard may have reasonable expectations of continued employment to prevent their employers from successfully pursuing a § 4312(d)(1) defense. Such short-term, recurrent positions, however, are readily distinguishable from Plaintiff's. A life guard may have the expectation that she will be employed every year from May through August, and a high school football coach may have the expectation that he will be employed every year from August through December. That is to say, such employees may have a reasonable expectation that their employment, however brief, will recur "indefinitely." The language in the statute regarding a "significant period of time" simply does not apply to seasonal workers, who, by their very nature, will never perform their work for a

significant period of time. There has been no argument that Plaintiff believed that his employment would continue indefinitely; thus, the Court must analyze only whether Plaintiff had no reasonable expectation that his employment would continue for a significant period of time. For the reasons discussed above, the Court finds that Plaintiff had no such expectation for his brief, nonrecurrent position.

Accordingly, the Court finds that Defendants have met their burden of establishing that they are entitled to the affirmative defense for brief, nonrecurrent employment provided in § 4312(d). Because Plaintiff was employed for a brief, nonrecurrent period with no reasonable expectation that his employment would continue for a significant period, Defendants were not required to reemploy him under USERRA. Accordingly, as to Plaintiff's § 4312 claim, Plaintiff's Motion for Summary Judgment will be **DENIED**, and Defendants' Motion for Summary Judgment will be **GRANTED**.

### 2. Unlawful Discharge & Discrimination Claims (38 U.S.C. §§ 4311, 4316)

Plaintiff has also asserted claims for discrimination and unlawful discharge pursuant to §§ 4311 and 4316 of USERRA. "§ 4312 protects military members up to the instant of reemployment, while other sections of USERRA, such as § 4311 and § 4316, protect the member after reemployment occurs." *Petty*, 538 F.3d at 439 (*quoting Francis*, 452 F.3d at 304. In this case, Plaintiff was never "reemployed" (nor was he required to be). Because claims under § 4311 and § 4316 accrue only after a returning service member has been reemployed, Plaintiff's remaining USERRA claims must fail. Accordingly, as to Plaintiff's USERRA discrimination and discharge claims, Plaintiff's

Motion for Summary Judgment will be **DENIED**, and Defendants' Motion for Summary Judgment will be **GRANTED**.[18]

## B. Breach of Contract

The parties have also cross-moved for summary judgment on Plaintiff's claim for breach of contract. Plaintiff contends HMC breached his contract when it "terminated the Employment Agreement illegally" and deprived him of income he would have earned under the terms of the contract. (Doc. 27 at 17). HMC counters that Plaintiff's breach of contract claim fails because it exercised its contractual right to terminate the contract with a 90-day written notice of termination. (Doc. 25 at 23).

"A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Dick Broadcasting Co. v. Oak Ridge FM*, 395 S.W.3d 653, 659 (Tenn. 2013) (*quoting Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009)). The intention of the parties is based on the plain and ordinary meaning of the language contained within the four corners of the contract. *Id.* "The literal meaning of the contract controls if the language is clear and unambiguous." *Id.*

---

[18] The Court notes that the final rules governing USERRA appear to conflict with this Circuit's ruling regarding the accrual time for a § 4311 discrimination claim. In *Petty*, the United States Court of Appeals for the Sixth Circuit emphasized that § 4311 applies only after reemployment has occurred. *Petty*, 538 F.3d at 439. The final rules, however, discuss hypothetical scenarios wherein a service member is not protected by the reemployment provision in § 4312 but nonetheless may maintain a claim for discrimination under § 4311. *See* 70 Fed. Reg. 75246-01, at 75249-50.

At this juncture, the Court must follow the binding precedent of this Circuit and find that Plaintiff has no § 4311 claim because he was not reemployed. However, in an abundance of caution in light of the apparent disparity in the law, the Court notes that Defendants would nonetheless be entitled to judgment as to Plaintiff's discrimination claim on the merits. Plaintiff has failed to set forth any evidence of a discriminatory motive for his discharge. The fact that he was given the termination agreement during his deployment is not evidence of discrimination against his military service in light of the record evidence as a whole, which demonstrates that Plaintiff was aware at the time he signed his employment contract and prior to his deployment that HMC was seeking a permanent orthopedic surgeon. Additionally, the fact that Plaintiff's replacement, Dr. Mosley, was also a service member who could be called to active duty undermines any argument Plaintiff could make regarding HMC's alleged discrimination against service members. *See Hays v. Commc'n Tech., Inc.*, 753 F. Supp. 2d 891, 901-02 (S.D. Iowa 2010).

Section 10.4 of Plaintiff's Employment Agreement explicitly provides that "[t]his Agreement may be terminated by either party with or without cause upon ninety (90) days written notice." (Doc. 24-2 at 93). The undisputed facts demonstrate that HMC provided Plaintiff with written notice that it was terminating the Employment Agreement on July 27, 2011 and that Plaintiff's last day of employment would be October 26, 2011, 91 days after HMC delivered written notice to Plaintiff. (Doc. 24-2 at 106, 112). Because the Employment Agreement clearly and unambiguously provides HMC with the right to terminate the contract upon 90-days' written notice, and because HMC provided Plaintiff with ninety days written notice, the Court finds that HMC did not breach the Employment Agreement by terminating the contract or by failing to employ Plaintiff through February 28, 2012. That Plaintiff may be entitled to additional rights and protections under USERRA beyond the terms of his contractual agreement does not augment the express and agreed upon terms of his Employment Agreement as it relates to a claim for breach of contract. Accordingly, as to Plaintiff's breach of contract claim, HMC's Motion for Summary Judgment will be **GRANTED**, and Plaintiff's Motion for Summary Judgment will be **DENIED**.

## IV.    CONCLUSION

Accordingly,

- Plaintiff's Motion to Dismiss Only Count III of his Complaint (Doc. 28) is hereby **GRANTED;**

- Plaintiff's Motion to Strike Paragraphs 7, 9 and 10 of Declaration of Tisha Rader for Failure to Comply with Rule 56(c)(4) (Doc. 31) is hereby **DENIED;**

- Defendants Motion for Summary Judgment (Doc. 24) is hereby **GRANTED;**

- Plaintiff's Motion for Summary Judgment (Doc. 26) is hereby **DENIED**;

- This action is hereby **DISMISSED WITH PREJUDICE**.


**SO ORDERED** this 18th day of February, 2015.


        _____*/s/ Harry S. Mattice, Jr.*_____
        HARRY S. MATTICE, JR.
        UNITED STATES DISTRICT JUDGE