# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

<table>
<tr><td>Deborah S. Hunt<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed:  October 26, 2015

Mr. Matthew C. Lonergan
Mr. John Patrick Rodgers
Bradley Arant Boult Cummings
1600 Division Street, Suite 700
Nashville, TN 37203

Ms. Shari Renee Rhode
Rhode & Jackson
1405 W. Main Street
Carbondale, IL 62901

Re: Case No. 15-5256, *Richard Slusher v. Shelbyville Hospital Corp, et al*
Originating Case No. : 4:12-cv-00060

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Ms. Debra Poplin

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0255p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

RICHARD SLUSHER, D.O.,

*Plaintiff-Appellant*,

No. 15-5256

*v.*

SHELBYVILLE  HOSPITAL  CORP.,  d/b/a  Heritage
Medical Center; DAN BUCKNER, individually,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 4:12-cv-00060—Harry S. Mattice, Jr., District Judge.

Decided and Filed:  October 26, 2015

Before:  MERRITT, McKEAGUE, and WHITE, Circuit Judges.

_____

#### COUNSEL

**ON BRIEF:**  Shari R. Rhode, RHODE & JACKSON, P.C., Carbondale, Illinois, for Appellant.
Matthew  C.  Lonergan,  John  P.  Rodgers,  BRADLEY  ARANT  BOULT  CUMMINGS  LLP,
Nashville, Tennessee, for Appellees.

MERRITT, J., delivered the opinion of the court in which McKEAGUE, J., joined, and
WHITE, J., joined in part.  WHITE, J. (pp. 14–23), delivered a separate opinion concurring in
part and dissenting in part.

_____

#### OPINION

_____

MERRITT, Circuit Judge.  In this employment case, plaintiff-appellant Richard Slusher,
D.O., claims that his employer breached his contract and discriminated against him and denied

No. 15-5256        *Slusher v. Shelbyville Hospital Corp., et al.*        Page 2

him reemployment in violation of the Uniformed Services Employment and Reemployment Rights Act.  The district court granted summary judgment to the defendants-appellees on all three claims, finding that: Slusher's contract was not breached, he was not the victim of discrimination, and he did not enjoy statutory entitlement to reemployment.

Reviewing the district court *de novo*, we reach the same conclusions and affirm the judgment of the district court.

## I. Facts

Plaintiff-appellant Richard Slusher is an orthopedic surgeon and military reservist. Defendant-appellee Shelbyville Hospital Corporation, d/b/a Heritage Medical Center ("Heritage"), is a hospital in Shelbyville, Tennessee.  Defendant-appellee Dan Buckner was the chief executive officer of Heritage from 2008 to 2013.

Heritage is a small hospital with staffing need for only one permanent orthopedic surgeon.[1]   In 2010, Heritage began looking for a new full-time orthopedic surgeon; while looking, it relied on temporary and fill-in service from local orthopedic surgeons and orthopedic surgeons supplied by the service Weatherby Locums, Inc.  During this time, Heritage relied on many orthopedic surgeons working from a week to a month at a time.  Richard Slusher began a thirty-day assignment at Heritage on July 20, 2010, and his assignment was renewed multiple times through October 2010.  At the time, Slusher and his family resided in Southern Pines, North Carolina.

While Heritage was searching for a permanent orthopedic surgeon, Buckner offered the position to Slusher.  Slusher did not accept the permanent position because he "wanted to keep [his] options open," but eventually agreed to serve as Heritage's orthopedic surgeon in a short-term capacity, and in January 2011 signed a one-year contract beginning on February 28, 2011. The contract could be terminated by either party for any reason so long as 90 days' notice was provided.  Moreover, Heritage could terminate the agreement at any time effective immediately

---

[1]In his appellate briefing, Slusher faults the district court for accepting Buckner's claim that Heritage required only one orthopedic surgeon on staff.  However, nowhere in the record below did Slusher dispute this fact or make any attempt to raise evidence that would bring this claim into dispute.  That the end of Slusher's employment briefly overlapped with the beginning of Mosley's does not belie Heritage's stated need for only one long-term orthopedic surgeon on staff.

by providing Slusher 90 days' pay instead of notice.  The contract did not provide for renewal or extension.  At the time the contract was signed, Heritage was aware of Slusher's military status and knew that he could be called up for deployment at any time.

Meanwhile, Heritage remained interested in finding a permanent orthopedic surgeon.  On April 7, 2011, Emmett Mosley, M.D., contacted Buckner to discuss becoming the hospital's permanent orthopedic surgeon.[2]

On May 4, 2011, Slusher received military orders that he was being deployed.  The following day, he notified Heritage of his impending deployment.  Sometime prior to Slusher's deployment, Heritage informed him that it had interviewed another physician for the orthopedic surgeon position.

On May 16, 2011, Heritage entered into a "Recruitment Agreement" with Mosley, laying out the terms to be set forth in his contract, including a three-year "Practice Commitment Period," an 18-month "Cash Collections Guarantee Period" and a "Practice Commencement Date: On before 8/1/11" [sic].  On June 1, 2011, Buckner and Mosley met for dinner to "discuss orthopedic surgery opportunities at [Heritage]."   Their conversation touched on Slusher's deployment and Mosley's own military career.  In an affidavit, Mosley recounted:

> 4. Buckner said to me that Slusher's deployment had "really messed things up" at [Heritage].
>
> 5. I told Buckner I was surprised that he was talking to me because I was in the military.
>
> 6. I went on to say that I had almost completed my commitment to the military.
>
> 7. Buckner responded that he already knew that because he "had to check everything out with corporate" and make sure I would not be deployed again before approaching me about possible employment at [Heritage].

Slusher was granted military leave by Heritage and reported for active duty at Fort Benning, Georgia, on June 10, 2011, and was shortly thereafter deployed, arriving in Kuwait

---

[2]Defendants' appellate briefing, prepared by Matthew C. Lonergan and John P. Rodgers, twice cites a transcript of Slusher's deposition to support the proposition that when Slusher signed his contract, "he was fully aware that [Heritage] was continuing its search" for a long-term orthopedic surgeon.  The cited portion of Slusher's deposition transcript does not support that proposition.  We remind counsel for defendants-appellees that their duty of candor to this Court requires accuracy in all filings.

No. 15-5256          *Slusher v. Shelbyville Hospital Corp., et al.*          Page 4

before going to Iraq.  While he was in Iraq, Heritage, through employee Tisha Rader, informed Slusher that it was nearing a contract with Mosley, and that Slusher would be given his 90-day termination notice.  On July 28, 2011, Slusher was sent a termination agreement to sign, specifying that his employment with Heritage would end on October 26, 2011.  Slusher returned a signed agreement, and indicated his intention to return to Heritage when his deployment ended in October and to work until October 26.

Slusher returned to Heritage — where Mosley had begun working — on October 3, 2011, and continued working there until his employment ended on October 26, 2011.

## II. Procedural History

In October 2011, Plaintiff filed a complaint about his termination with the Veterans' Employment and Training Service.  After the Department of Labor closed its investigation, Slusher initiated this action.  He asserts claims for discrimination under the Uniformed Services Employment and Reemployment Rights Act ("the Act"), 38 U.S.C. §§ 4301-35, violation of his reemployment rights under the Act, and for breach of contract.[3]

Both parties moved for summary judgment on all of Slusher's claims, and the district court granted summary judgment to defendants Heritage and Buckner on all claims.  Slusher then filed this appeal, arguing that the district court erred in granting summary judgment to the defendants on each claim.

## III. Discussion

This Court reviews the district court's grant of summary judgment *de novo. Miller v. Sanilac Cnty.*, 606 F.3d 240, 246 (6th Cir. 2010).  Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Id.* (citing Fed. R. Civ. P. 56(c)).  We make all reasonable factual inferences in favor of the nonmoving party and uphold a grant of summary judgment only where the record as a whole could not lead a rational trier of fact to find for the non-moving party.  *Id.* at 247.

---

[3]Slusher also raised a claim for intentional infliction of emotional distress, but subsequently filed an unopposed motion to voluntarily dismiss that claim.  The district court granted the motion and dismissed the claim with prejudice.

No. 15-5256         *Slusher v. Shelbyville Hospital Corp., et al.*         Page 5

### A. Reemployment Claim Under § 4312

Slusher first argues that the district court erred in granting summary judgment to the defendants on his claim that his early termination violated his reemployment rights under § 4312.

Under § 4312(a) of the Act "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits" of the Act, so long as he gave notice to his employer in advance of his deployment, was absent for five years or less, and seeks reemployment.  38 U.S.C. § 4312(a).[4]  However, there is no statutory right to reemployment if "the employment from which the person leaves to serve in the uniformed services is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period." *Id.* § 4312(d)(1)(C).  In such an instance, "the employer shall have the burden of proving . . . the brief or nonrecurrent nature of the employment without a reasonable expectation of continuing indefinitely or for a significant period." *Id.* § 4312(d)(2).

As far as Slusher, Buckner, and Heritage would have been concerned, the employment from which Slusher left to serve in the uniformed services was for *at most* a year; the parties were bound by an at-will one-year contract that did not provide for any renewal or extension.  Moreover, Heritage and Buckner were actively seeking to hire a permanent orthopedic surgeon at the time Slusher notified his employer of his impending deployment.  Slusher was aware that Heritage was interested in finding a permanent orthopedic surgeon because it offered the position to him and he declined it.

That Slusher's contract was for one year and did not provide for renewal or extension plainly means that his employment was for a "nonrecurrent period" and that he could not have had a "reasonable expectation" that his employment would "continue indefinitely."  Thus, whether the § 4312(d)(1)(C) exception applied to Slusher's employment turns on whether it was "brief" and whether Slusher had a "reasonable expectation" that it would continue "for a significant period."

---

[4]When a returning employee is entitled to reemployment according to § 4312, the required character of that reemployment is set out in 38 U.S.C. §§ 4313, 4316.  Because we conclude that Slusher was not entitled to reemployment under § 4312, we do not reach the question of whether his reemployment with Heritage complied with the §§ 4313 and 4316 reemployment requirements.

Slusher cannot be said to have had a reasonable expectation that his employment would continue "for a significant period." Slusher was aware that Heritage was interested in finding a permanent orthopedic surgeon because it offered the position to him and he declined it, and he would have understood that his at-will contract (including a clause allowing Heritage to terminate the agreement with no notice in exchange for 90 days' pay) allowed Heritage to promptly dismiss him upon finding a permanent replacement. Therefore, the relevant question is not whether the remainder of Slusher's one-year contract was "a significant period," because in these circumstances Slusher could not have reasonably expected to finish the one-year term. Rather, the relevant question is: How long did Slusher reasonably expect his employment to continue, and was that amount of time a "significant period"? Given Slusher's situation, he could have reasonably expected his employment to continue for significantly less than a year, potentially ending in a matter of weeks or months if Heritage could secure a permanent orthopedic surgeon. The Act does not define "significant period" as used in § 4312, *see* 38 U.S.C. § 4303, but any remaining employment term likely measured in weeks or months falls outside the bounds of a "significant period." In the context of employment duration, a significant period is one that would provide an employee with some semblance of security or offer the ability to engage in long-term planning. Slusher did not find himself in that position. Practically speaking, he had a temporary job ending as soon as a suitable replacement could be secured. Slusher could not have reasonably expected his employment with Heritage to continue for a significant period.

Finally, then, is the question of whether the employment from which Slusher left to serve in the uniformed services was for a "brief" period. The Act does not provide a definition of "brief" as used in § 4312, *see* 38 U.S.C. § 4303, but comments to the final rules governing the Act state that a three-month position would be considered "brief," 70 Fed. Reg. 75246-01, 75249-50 (Dec. 19, 2005).[5] At the other end of the spectrum, one federal court has persuasively held that a four-year employment term is not "brief." *See United States v. Nevada*, 817 F. Supp. 2d 1230, 1245-46 (D. Nev. 2011). In Slusher's case, the district court determined that a one-year

---

[5] "[S]ome, but not all, temporary, seasonal employment positions are brief and non-recurrent, and provide the employee no reasonable expectation of continued employment, such as an employment contract that covers a one-time-only, three-month-long position." 70 Fed. Reg. 75246-01, 75249-50 (Dec. 19, 2005).

No. 15-5256          *Slusher v. Shelbyville Hospital Corp., et al.*          Page 7

employment term was brief, noting both *Nevada* and the commentary to the final rules, and declaring:

> In making this determination, the Court has considered the 5-year limit that USERRA places on reemployment rights, as well as the fact that the average American will be a member of the work force for over 30 years before retirement. A one-year employment contract is certainly brief when compared with either of these metrics.

Although the authorities and reasoning employed by the district court inform our analysis, and we affirm the judgment of the district court, we do not decide whether a one-year employment term is *necessarily* brief. Rather, we hold that Slusher's employment term was brief because both parties would have contemplated that it would last up to one year but most likely less. Once more, it bears emphasizing that Heritage was seeking a permanent orthopedic surgeon, and was capable of terminating Slusher's contract at any time because of the at-will clauses it contained. An employment term of this particular nature — a one-year at-will contract likely to be terminated early — is brief. We are careful to note, however, that the at-will nature of a contract should not always weigh so heavily in determining whether an employment term is "brief" for purposes of § 4312. Given the prevalence of at-will contracts in the modern American labor market, if at-will clauses are afforded too much weight the § 4312(d)(1)(C) exception could swallow the general reemployment rule of § 4312(a). But in this case, Slusher's at-will contract is properly given substantial weight because all parties would have contemplated that Heritage actually intended to invoke the at-will clause as soon as it practically could in order to facilitate hiring a permanent orthopedic surgeon.

The employment from which Slusher left to serve in the uniformed services was for a brief, non-recurrent period, and there was no reasonable expectation that Slusher's employment would continue indefinitely or for a significant period. Therefore, Slusher has no right to reemployment under § 4312, and the district court properly granted summary judgment to the defendants on Slusher's reemployment claim.

### B. Discrimination Claim Under § 4311

Slusher also argues that the district court erred in granting summary judgment to the defendants on his claim that his termination constituted discrimination in violation of § 4311.

No. 15-5256        *Slusher v. Shelbyville Hospital Corp., et al.*        Page 8

In granting summary judgment to the defendants on Slusher's § 4311 claim, the district court asserted that § 4311 "protect[s] [a service] member after reemployment occurs." *Slusher v. Shelbyville Hosp. Corp.*, No. 4:12-cv-60 (E.D. Tenn. Feb. 18, 2015) (quoting *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 440 (6th Cir. 2008)). Finding that Slusher "was never 'reemployed' (nor was he required to be [under § 4312])," the district court held that Slusher could not maintain a § 4311 claim. *Id.* Although Slusher resumed working for Heritage upon return from his deployment, the district court found that he "was not 'reemployed' under [the Act] because he was not provided with the full scope of 'reemployment rights and employment benefits' afforded by the statute." *Slusher v. Shelbyville Hosp. Corp.*, No. 4:12-cv-60 (E.D. Tenn. Feb. 18, 2015) (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 305 (4th Cir. 2006)).

Even if one assumes (and we do not, *see infra* at 11-12) that § 4311 discrimination protections apply only upon reemployment, the district court's understanding that § 4311 discrimination protections apply only upon reemployment *that complies with the Act's other requirements* is dubious because it would reward employers for failing to compliantly reemploy returning military members by shielding those employers from § 4311 discrimination claims. It is highly doubtful that the drafters of the Act intended noncompliance with some of its provisions to trigger immunity from other provisions. More likely, *if* reemployment is a prerequisite to a § 4311 claim, it would either be *mandatory* reemployment under § 4312, or reemployment in the sense that the employee has returned to work even though § 4312 did not guarantee him or her reemployment. Because we conclude that Slusher was not discriminated against, we neither reach nor resolve these issues.

Meanwhile, in a footnote the district court also noted some disagreement as to whether reemployment is in fact a prerequisite to a § 4311 claim, and held that Slusher's § 4311 discrimination claim would lose on summary judgment even if he was permitted to raise it:

> The Court notes that the final rules governing [the Act] appear to conflict with this Circuit's ruling regarding the accrual time for a § 4311 discrimination claim. In *Petty*, the United States Court of Appeals for the Sixth Circuit emphasized that § 4311 applies only after reemployment has occurred. *Petty*, 538 F.3d at 439. The final rules, however, discuss hypothetical scenarios wherein a service member is not protected by the reemployment provision in § 4312 but nonetheless

> may maintain a claim for discrimination under § 4311. *See* 70 Fed. Reg. 75246-01, at 75249-50.
>
> At this juncture, the Court must follow the binding precedent of this Circuit and find that Plaintiff has no § 4311 claim because he was not reemployed. However, in an abundance of caution in light of the apparent disparity in the law, the Court notes that Defendants would nonetheless be entitled to judgment as to Plaintiff's discrimination claim on the merits. Plaintiff has failed to set forth any evidence of a discriminatory motive for his discharge. The fact that he was given the termination agreement during his deployment is not evidence of discrimination against his military service in light of the record evidence as a whole, which demonstrates that Plaintiff was aware at the time he signed his employment contract and prior to his deployment that [Heritage] was seeking a permanent orthopedic surgeon. Additionally, the fact that Plaintiff's replacement, Dr. Mosley, was also a service member who could be called to active duty undermines any argument Plaintiff could make regarding [Heritage]'s alleged discrimination against service members. *See Hays v. Commc'n Tech., Inc.*, 753 F. Supp. 2d 891, 901-02 (S.D. Iowa 2010).

*Id*. at n.18. Because we affirm the district court's holding on the merits of Slusher's § 4311 discrimination claim, we also do not reach the question of *whether* reemployment (mandatory under § 4312 or otherwise) is a prerequisite to a § 4311 claim.

We emphasize, however, that *Petty* did not address the pertinent regulations that contradict its holding. *See* 538 F.3d at 439-40; 70 Fed. Reg. 75246-01, at 75249-50 ("Such brief, non-recurrent positions enjoy the protections afforded by [the Act's] anti-discrimination/anti-retaliation provisions, but are not protected by the statute's reemployment provisions."). Thus, the question of whether reemployment is a prerequisite to a § 4311 discrimination claim may be due for reexamination in an appropriate future case. It is also worth noting that many of our sister circuits have treated § 4311 discrimination claims as wholly independent from § 4312 reemployment rights. *See Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 547 (5th Cir. 2013) (quoting Kathryn Piscitelli and Edward Still, *USERRA Manual* § 7:5 (2012)) ("Section 4311's protection against discrimination and retaliation should not be confused with the right to reemployment under § 4312 of [the Act]. It is possible that denying reemployment to a returning servicemember could, depending on the facts, give rise to claims under both § 4311 and § 4312. Nonetheless, the two sections are separate and distinct."); *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231 (11th Cir. 2005) (separately analyzing the plaintiff's § 4311 claim after concluding that his § 4312 claim was properly denied); *Leisek v. Brightwood Corp.*, 278 F.3d

No. 15-5256     *Slusher v. Shelbyville Hospital Corp., et al.*     Page 10

895, 891-901 (9th Cir. 2002) (allowing the plaintiff's § 4311 discrimination claim to proceed despite denying his § 4312 reemployment claim). *But see, e.g.*, *Francis*, 452 F.3d at 304 (4th Cir. 2006) ("Section 4311 prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services after they return from a deployment and are reemployed. . . . In short, § 4312 requires an employer to rehire covered employees; § 4311 then operates to prevent employers from treating those employees differently after they are rehired.").

> In any event, the Act formulates its anti-discrimination provision as follows:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation. . . . An employer shall be considered to have engaged in actions prohibited . . . if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service . . . .

38 U.S.C. §§ 4311(a), (c). "An individual bringing a § 4311 claim has the initial burden of proving a prima facie case of discrimination by showing, by a preponderance of the evidence, that his protected status was a substantial or motivating factor in the adverse employment action(s)." *Petty*, 538 F.3d at 446. "The burden then shifts to the employer to prove the affirmative defense that the employment action(s) would have been taken in the absence of the employee's protected status." *Id.*

Slusher's purported evidence of a discriminatory motive in his termination is the affidavit of his eventual replacement, Dr. Emmett Mosley. In the affidavit, Mosley recounts a conversation he had with Buckner while he was being recruited to Heritage. According to Mosley, Buckner stated that Slusher's deployment "had really messed things up" for Heritage, and that Buckner "had to check everything out with corporate" to make sure that Mosley (himself a military physician) would not be deployed.

No. 15-5256          *Slusher v. Shelbyville Hospital Corp., et al.*          Page 11

Heritage, meanwhile, produced strong, uncontroverted evidence that it would have terminated Slusher's employment notwithstanding his military service. Specifically, Heritage sought to find an orthopedic surgeon who would agree to work at the hospital on a permanent basis (a position Slusher had been offered and declined). To this end, Heritage signed Slusher to a one-year contract that it could terminate whenever it wanted (albeit at a price), and was actively seeking Slusher's replacement before it knew that he would be deployed. Moreover, at the time Heritage hired Slusher, it knew he was subject to deployment.

The clear upshot of this evidence is that Heritage sought to replace Slusher because it wanted a permanent orthopedic surgeon, not because of Slusher's military service. Its motivation to find a permanent employee is reflected both in that it offered Slusher the permanent position and that it continued looking for his replacement before it knew of his deployment. That Heritage hired Slusher in the first place and then replaced him with Mosley further demonstrates that it did not disfavor military physicians.

On its own, the Mosley affidavit serves as some evidence in support of Slusher's claim, but Heritage would carry its burden of proving an affirmative defense with its strong evidence of a nondiscriminatory motive for replacing Slusher. In this context, the statements Mosely attributed to Buckner appear to describe the attributes Heritage desired in its permanent orthopedic surgeon, not the reasons for terminating Slusher's temporary employment.

In light of this evidence, there is no genuine issue as to any material fact and the district court properly granted summary judgment to the defendants-appellees on Slusher's discrimination claim.

### C. Breach of Contract Claim

Slusher's final argument is that the district court erred in granting summary judgment to the defendants on his breach of contract claim. Slusher contends Heritage breached his contract when it terminated his employment, thereby depriving him of income he would have earned under the terms of the contract. Heritage counters that Slusher's breach of contract claim fails because it exercised its contractual right to terminate the contract with a 90-day written notice of termination.

"A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Dick Broadcasting Co. v. Oak Ridge FM*, 395 S.W.3d 653, 659 (Tenn. 2013) (quoting *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009)). The intention of the parties is based on the plain and ordinary meaning of the language contained within the four corners of the contract. *Id.* "The literal meaning of the contract controls if the language is clear and unambiguous." *Id.*

Section 10.4 of Slusher's Employment Agreement explicitly provides that "[t]his Agreement may be terminated by either party with or without cause upon ninety (90) days written notice." The undisputed facts demonstrate that Heritage provided Slusher with written notice that it was terminating the Employment Agreement on July 27, 2011 and that Slusher's last day of employment would be October 26, 2011, 91 days after Heritage delivered written notice to Slusher. (Doc. 24-2 at 106, 112). Because the Employment Agreement clearly and unambiguously provides Heritage with the right to terminate the contract upon 90 days' written notice, and because Heritage provided Slusher with 90 days' written notice, Heritage did not breach the Employment Agreement by terminating the contract or by failing to employ Slusher through February 28, 2012.

Slusher's argument that Heritage was required to pay him "the salary differential between his military pay and his civilian salary under [Heritage's] own military leave policy" while he was deployed also fails. Whether or not the military leave policy was incorporated into Slusher's contract and binds the parties (a point the parties dispute), Slusher cannot invoke it to support his breach of contract claim because it clearly states: "Individuals employed in brief, nonrecurring positions in which there is no reasonable expectation that the position will continue indefinitely or for a significant period are not subject to this Policy." The clause is obviously intended to track the language of the 38 U.S.C. § 4312(d)(1)(C) exception, and should therefore be interpreted in the same way. Because we have already determined that the § 4312(d)(1)(C) exception precluded Slusher from enjoying the Act's reemployment rights, we also hold that he was precluded from enjoying any rights or benefits in Heritage's military leave policy by the policy's own terms.

Finally, Slusher's arguments that the Act altered his contract or otherwise limited Heritage's ability to terminate it cannot support his breach of contract claim. That the Act might have entitled Slusher to additional rights and protections beyond the terms of his contract does not affect how the terms of his contract are analyzed in a claim for breach.

Heritage's termination of Slusher's employment did not breach Slusher's contract. The district court properly granted summary judgment to the defendants on Slusher's breach of contract claim.

\*      \*      \*

Contrary to our dissenting colleague's view, Slusher could not have had a reasonable expectation of employment for a significant period at Heritage either when he signed his contract with Heritage, or when he was in the service, or when he returned from the service. When he signed the contract, he told the company that he did not want to be their permanent orthopedic surgeon, and he should have expected that he would not have a job for very long. When he was in the service, Heritage told him that they had hired Dr. Moseley as the permanent orthopedic surgeon. When he returned, Dr. Moseley had assumed his position as the permanent surgeon; and Slusher knew that he would no longer have a position after a short three-week period. Thus, under all sections of the Act, including the discrimination section, 4311, Slusher could not have reasonably expected a long term job, nor that Heritage was denying him a job because he was subject to military service. Dr. Moseley, the new permanent orthopedic surgeon, was himself—as all knew—subject to military service.

### IV. Conclusion

Defendants Heritage and Buckner were entitled to summary judgment on Slusher's claims of violation of his Uniformed Services Employment and Reemployment Rights Act rights and breach of contract. The district court's judgment is affirmed.

_____

### CONCURRING IN PART AND DISSENTING IN PART

_____

HELENE N. WHITE, Circuit Judge, concurring in part and dissenting in part.

### A.  Slusher's Entitlement to Reemployment Under 38 U.S.C. § 4312

The majority concludes that there is no genuine issue of material fact whether Slusher is entitled to reemployment because the employment from which he left to serve in the military was for a "brief, nonrecurrent period" and there was "no reasonable expectation" his employment would "continue indefinitely or for a significant period."  *See* 38 U.S.C. § 4312(d)(1)(C). I disagree.  Heritage has the burden of proving the applicability of this defense.  *Id.* § 4312(d)(2). And, because USERRA was enacted "to protect the rights of veterans and members of the uniformed services," its protections are to be construed broadly in favor of veterans and any defenses are to be construed narrowly against the employer.  *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 439 (6th Cir. 2008) (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir. 2006)); *United States v. Nevada*, 817 F. Supp. 2d 1230, 1242 (D. Nev. 2011).

The inquiry whether an employee has no reasonable expectation of continued employment for a significant period focuses on the nature of the position and the employee's expectation prior to serving in the uniformed services.  *See* 38 U.S.C. § 4312(d)(1)(C) (placing perspective of affirmative defense on "the employment from which the person leaves to serve in the uniformed services" and whether there is "no reasonable expectation that such employment will continue indefinitely or for a significant period"); *Nevada*, 817 F. Supp. 2d at 1246 n.5 ("The court disagrees with the suggestion that this third exemption turns on Ingram's expectation of *reemployment* upon his return from service, as opposed to continued employment had he not left."); *see also Cole v. Swint*, 961 F.2d 58, 60 (5th Cir. 1992) (interpreting similar defense under USERRA's predecessor[1] and rejecting the employer's argument that the position was a temporary and transient need filled with casual employment because the employee had a written

_____

[1]"Relevant pre-USERRA case law is properly considered as a guide to interpreting USERRA."  *Petty*, 538 F.3d at 439.

employment contract, was paid a monthly salary, and a replacement was hired as soon as the employee was terminated); *Martin v. Roosevelt Hosp.*, 426 F.2d 155, 159-60 (2d Cir. 1970) (interpreting USERRA's predecessor and focusing on "the nature of the position rather than the terms of the contract of employment" and whether the employee "could reasonably have expected at the times he began service and was called for military duty that space would be made to reinstate him" when he returned (quoting *Trusteed Funds v. Dacey*, 160 F.2d 413, 418 (1st Cir. 1947))). There is no dispute here that the position—orthopedic surgeon at Heritage—was one that Heritage contemplated filling in a long-term capacity; Heritage does not argue that it only needed an orthopedic surgeon for a limited time, but instead argues that it was seeking a permanent orthopedic surgeon to replace its prior permanent orthopedic surgeon. *See Martin*, 426 F.2d at 159 (noting that "the position [from which the employee left to serve in the military] existed, and it still does"); *id.* (providing as examples of temporary positions an extra store clerk hired to fill the needs in a holiday rush and someone hired to perform a particular task that was completed during the person's military service where the employer does not typically employ persons for such tasks); 70 Fed. Reg. 75246-01, 75249-50 (Dec. 19, 2005) (noting that a "one-time-only, three-month-long position" would not provide the employee a reasonable expectation of continued employment). Nonetheless, if Slusher did not have a reasonable expectation that his employment in this particular permanent position would continue for a significant period, Heritage was not obligated to reemploy Slusher pursuant to USERRA. *See* 38 U.S.C. § 4312(d)(1)(C).

The majority concludes there is no genuine issue of material fact whether Slusher had a reasonable expectation that his employment with Heritage would continue for a significant period because it finds that Slusher could not have expected to finish his one-year term. Maj. Op. at 6. However, Slusher testified that he expected to complete the term of his contract when he left Heritage for military service. The majority highlights that Slusher declined the permanent orthopedic surgeon position with Heritage. But Slusher testified that he declined because he was not sure about committing long-term to Heritage, and instead agreed to a one-year term to give him time to convince his wife to move to Tennessee.

The majority also emphasizes that the contract did not provide for renewal or extension. Maj. Op. at 5.  The significance of this fact is not apparent, as the parties could have decided to renew or extend the contract even if the initial contract did not specifically provide for that possibility, just as the parties had extended Slusher's locum tenens assignment beyond the initial thirty-day period.  And Slusher also testified that he and Buckner decided when they negotiated the one-year contract that they could discuss a potential contract extension as the end of the contract term approached.

That Slusher was aware of Heritage's continued search for a permanent orthopedic surgeon and was aware, at the time he left, of Heritage's discussions with another doctor, does not mean that as a matter of law Slusher could have no reasonable expectation to complete, or even extend, his contract.  Slusher testified that when he left Heritage for uniformed service, he was not even aware of the identity of the candidate.  Nor is it clear that Heritage and Mosley were close to reaching agreement at the time Slusher was deployed.  Mosley's affidavit states that he and Buckner had dinner on June 1, days before Slusher was deployed, where Mosley expressed surprise that Buckner was even talking to him.  And, although the record is not clear about when Mosley and Heritage finally reached agreement, Mosley did not sign an agreement with Heritage until at least August—approximately two months after Slusher was deployed.

Finally, I do not believe Congress intended to relieve an employer from the reemployment obligation when an employee leaves for uniformed service while under a term contract extending beyond the date of the employee's return from service.  We have said as much already.  *See Stevens v. Tennessee Valley Auth.*, 687 F.2d 158, 162 (6th Cir. 1982).  In *Stevens*, we interpreted the Veterans' Reemployment Rights Act's (VRRA) grant of reemployment rights to veterans who left a civilian position, "other than a temporary position," to serve in the military.  *Id.* at 160.  In determining whether a position was other than temporary, we analyzed "whether the veteran, prior to his entry into military service, **had a reasonable expectation**, in light of all of the circumstances of his employment, that his employment **would continue for a significant or indefinite period**." *Id.* at 161 (emphasis added).  This is the same

No. 15-5256          *Slusher v. Shelbyville Hospital Corp., et al.*          Page 17

test at issue here.[2]   In rejecting the employer's argument that the employee had no reasonable expectation of continued employment for an indefinite or significant period because he was only hired for a construction project, and thus his term had a definite end date, we explained that it is an "absurdity that an employee having the protection of a fixed period of employment would be worse off than one who could be discharged at will," and further that "[e]ven more absurd would be the assertion that an employee hired for a definite period which had not expired upon his return from military service would nevertheless not be entitled to reemployment."  *Id.* at 162 (quoting *Martin*, 426 F.2d at 159).

In concluding that Slusher had no reasonable expectation of employment for a significant period, the majority explains, without citation to authority, that "a significant period is one that would provide an employee with some semblance of security or offer the ability to engage in long-term planning."  Maj. Op. at 6.  Even assuming this definition of "significant period" is correct, if Slusher had a reasonable expectation of serving out the remainder of his contract, that would undoubtedly provide him with a semblance of security and offer him the ability to engage in long-term planning.   Slusher would have made almost $200,000 after returning from deployment if he had been allowed to fulfill his contract, providing him security and means to engage in long-term planning.  More importantly, no matter the salary, knowing where one's next several months of income will be coming from after returning home from serving one's country would certainly provide at least a semblance of security to a uniformed service member.

Viewing the evidence in the light most favorable to Slusher and drawing all reasonable inferences in his favor, as we must on summary judgment, *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868 (6th Cir. 2011), there remains a genuine issue of material fact whether Slusher had a reasonable expectation that his employment would continue for a significant period.  Here, a "significant period" would at least be met if he had a reasonable expectation of serving out the remainder of his contract after returning from deployment.

_____

   [2] "Congress emphasized USERRA's continuity with the VRRA and its intention to clarify and strengthen that law.  Congress also emphasized that Federal laws protecting veterans' employment and reemployment rights for the past fifty years had been successful and that the large body of case law that had developed under those statutes remained in full force and effect, to the extent it is consistent with USERRA."  20 C.F.R. § 1002.2.

## B.  Slusher's Reemployment Claim Under §§ 4312 and 4313

In *Petty*, 538 F.3d at 445, the employee argued his employer violated §§ 4312 and 4313 by denying him the ability to perform off-duty work, which he had requested ten months after he was reemployed.  We explained that the timing of the request for this benefit meant that § 4312 was not implicated, since § 4312 only entitles a person to immediate reemployment.  *Id.*  We went on to explain, however, that "notwithstanding the timing problem, Petty's ability to engage in off-duty security work is not the type of benefit protected by USERRA's right to reemployment.  Section 4312 protects only a service person's right to reemployment, which in turn triggers § 4313's guarantee of the appropriate position of employment.  Section 4313 protects only the service person's 'seniority, status and pay.'"  *Id.*  On this basis, we held that "[w]hile the ability to perform off-duty work may well have been an added benefit of Petty's position at Metro, it is not part of Petty's 'seniority, status and pay.'  Because §§ 4312 and 4313 do not protect the type of general 'benefits' that would include Petty's off-duty work, this claim may not be brought under these provisions."  *Id.*

Under *Petty*'s reasoning, then, §§ 4312 and 4313 do not protect employment benefits other than an employee's seniority, status, and pay at the instant of reemployment, which would not encompass the length of employment provided by contract.[3]  Accordingly, under *Petty*, Heritage reemployed Slusher in accordance with §§ 4312 and 4313 because it promptly reemployed him with the appropriate seniority, status, and pay.

## C.  Slusher's Unlawful Discharge Claim Under § 4316

Because Slusher served between 31 and 180 days in the uniformed services, USERRA prohibits Heritage from discharging Slusher without cause within 180 days following reemployment.  38 U.S.C. § 4316(c)(2).  Heritage does not argue that Slusher was terminated for cause.  Instead, Heritage argues that it did not terminate Slusher, but rather Slusher and Heritage mutually agreed to terminate Slusher's employment.

---

[3]Although §4312 provides that employees returning from service receive all "other employment benefits of this chapter" if they are entitled to reemployment, and those benefits would seem to include all advantageous terms of employment conferred by contract, *see* 38 U.S.C. § 4303(2), *Petty* limited benefits under §§ 4312 and 4313 to seniority, status, and pay at the instant of reemployment.  538 F.3d at 445.

Heritage's argument is unpersuasive.  USERRA expressly supersedes any substantive contractual terms that reduce, limit, or eliminate the rights afforded by USERRA.  38 U.S.C. § 4302(b).  Because the termination notice and termination agreement limit Slusher's substantive USERRA rights, they are superseded.  *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1107 (6th Cir. 2010).  Even if Slusher could waive his substantive USERRA rights by agreeing to terminate his contract, he would need to do so by clear and unambiguous language in exchange for consideration that was more valuable than the USERRA rights he gave up.  *Id.* at 1107-08.  Slusher presented unrebutted evidence that he was unaware of his USERRA rights when he signed the termination agreement.  After he learned of his USERRA rights, and prior to reemployment, he asserted them and stated his intention to complete the full term of his employment agreement.  In addition, Slusher did not receive additional consideration for signing the termination agreement.  Under these circumstances, we should not enforce a termination agreement that has the effect of eliminating Slusher's § 4316 rights.  *See id.* at 1108.

Accordingly, if Heritage was required to reemploy Slusher under § 4312, it violated § 4316 by discharging him without cause twenty-three days after he returned from service.  Because there is a genuine issue of material fact whether Slusher was entitled to reemployment pursuant to § 4312, I would reverse the district court's grant of summary judgment on Slusher's § 4316 unlawful discharge claim.

### D.  Slusher's Discrimination Claim Under § 4311

As an initial matter, as the majority opinion alludes, the district court's conclusion that a claim under § 4311 only accrues after reemployment under § 4312 is erroneous.  *See* Maj. Op. at 8-10.  In reaching a contrary conclusion, the district court relied on the following language from *Petty*, explaining the holding of a Fourth Circuit case: "[Section] 4312 protects military members up to the instant of reemployment while other sections of USERRA, such as § 4311 and § 4316, protect the member after reemployment occurs."  *Petty*, 538 F.3d at 440 (citing *Francis*, 452 F.3d at 304).

Although this language is clear that § 4311 protects service members from discrimination after reemployment under § 4312, nothing in *Petty* indicates that a § 4311 claim only accrues after reemployment under § 4312.  Indeed, the court in *Petty* provided a footnote to the statement

relied upon by the district court, explaining that "[t]he actual language of § 4311 may not limit its application to returning veterans" but that it would not decide that issue because it "do[es] not affect the current case." *Id.* at 440 n.4. Therefore, the court acknowledged that § 4311 may protect employees who serve in the military and are not entitled to reemployment pursuant to § 4312.

Moreover, the court in *Petty* was simply explaining why it was reasonable to limit the protections of §§ 4312 and 4313 to the time of reemployment, i.e., because other provisions of USERRA provide protection after reemployment. The court did not conclude that § 4311's protections apply only after reemployment under USERRA. Such a construction would be contrary to the plain language of § 4311, which protects individuals who have merely "applie[d] to perform" uniformed service, and protects those individuals from being denied even initial employment. *See* 38 U.S.C. § 4311(a); *see also Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 547 (5th Cir. 2013) ("Section 4311 discrimination can appear throughout the employment continuum, from consideration for hiring to employee termination.").

Finally, as the district court acknowledged, reading *Petty* to hold that § 4311 applies only after reemployment under USERRA would conflict with the final rules, which "discuss hypothetical scenarios wherein a service member is not protected by the reemployment provision in § 4312 but nonetheless may maintain a claim for discrimination under § 4311." (R. 35: Order, PID 940 n.18 (citing 70 Fed. Reg. 75246-01, at 75249-50 (Dec. 19, 2005)).) Accordingly, even if Slusher did not have a statutory right to reemployment, his § 4311 claim would not automatically fail.

On the merits of the § 4311 discrimination claim, there is a genuine dispute of material fact whether Slusher's military service was a motivating factor in Heritage's decision to terminate Slusher's contract early. Likewise, there is a genuine dispute of material fact whether Heritage would have taken the same action in the absence of Slusher's deployment.

As the majority notes, "[a]n individual bringing a § 4311 claim has the initial burden of proving a prima facie case of discrimination by showing, by a preponderance of the evidence, that his protected status was a substantial or motivating factor in the adverse employment action(s)." Maj. Op. at 10 (quoting *Petty*, 538 F.3d at 446). "The burden then shifts to the

employer to prove the affirmative defense that the employment action(s) would have been taken in the absence of the employee's protected status." *Id.* (quoting *Petty*, 538 F.3d at 446). That Slusher's service was **a** motivating factor "does not mean that it had to be the sole cause of the employment action. Instead, it [must be] one of the factors that a truthful employer would list if asked for the reasons for its decision." *Petty*, 538 F.3d at 446 (quoting *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005)). "[M]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Id.* (quoting *Coffman*, 411 F.3d at 1238).

In the context of a motion for summary judgment, Mosley's affidavit provides sufficient evidence that Heritage relied on or took into account Slusher's military status when it decided to terminate his contract. It provides evidence that the decision maker and named defendant, Buckner, was frustrated with Slusher's deployment because it had "really messed things up" at Heritage. It also provides evidence that Buckner was only considering Mosley because Heritage had investigated Mosley to make sure he would not be deployed again, which leads naturally to the inference that Heritage and Buckner were moving on from Slusher in part because of his deployment. Accordingly, Mosley's affidavit raises a genuine issue of material fact whether Slusher's military status was a motivating factor in Heritage's decision to terminate Slusher's contract. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011) ("When the company official who makes the decision to take an adverse employment action is personally acting out of hostility to the employee's membership in or obligation to a uniformed service, a motivating factor obviously exists.").

The timing and sequence of events bolsters the inference that Heritage was motivated by Slusher's military status. Slusher informed Buckner that he was being deployed no later than May 5, 2011. Although Buckner testified that Heritage was seeking a permanent orthopedic surgeon prior to Slusher's deployment, and that Mosley initially called Buckner prior to Buckner learning about Slusher's deployment, Buckner merely described that call as an initial "direct contact with the CEO at the hospital to talk about recruitment." (R. 27-1: Buckner Dep., PID 448.) The "recruiting agreement," which was never signed by Mosley and was merely a working draft for Heritage's purposes, was dated May 16, after Slusher had informed Heritage of his

impending deployment.  Buckner testified that this document would be prepared "as soon as we begin to get serious and we're trying to start the negotiation process on a contract."  (*Id.*, PID 488.)  According to Buckner, then, Heritage did not actually begin to get serious about Mosley or even start the negotiation process until eleven days after it knew of Slusher's deployment.  Based on this timing, it would be reasonable to infer that Buckner and Heritage were motivated at least in part by Slusher's deployment to find a replacement quickly.

Additionally, once Heritage knew Slusher was being deployed, it had a financial incentive to replace him while he was deployed.  Slusher's contract provided that Heritage could terminate his agreement with ninety days' written notice or, in lieu of notice, terminate his agreement without notice and pay him ninety days' salary.  Thus, by giving him notice while he was deployed, Heritage was able to replace Slusher and avoid paying all but three weeks of the ninety-day salary.  Based on the timing of events and Buckner's statements, it would be reasonable to infer that Heritage was acting quickly to replace Slusher to avoid paying him ninety days' salary.  Because this incentive arose as a result of Slusher's deployment, acting on this incentive would be an impermissible motivating factor in Heritage's decision to replace Slusher and terminate his contract when it did.

There is also a genuine issue of material fact about whether Heritage would not have made the same decision in the absence of Slusher's military status.  Contrary to the majority's analysis, the issue is not whether Heritage would have hired a permanent orthopedic surgeon, but whether it would have done so **when it did** had Slusher not been deployed.  A reasonable jury could conclude Heritage would not have terminated Slusher's contract when it did had he not been deployed, based on the evidence and for the reasons explained above.

Accordingly, I would reverse summary judgment in favor of Heritage and remand the discrimination claim for trial.

### E.  Slusher's Breach of Contract Claim

I agree with the majority that the ninety-day provision did not guarantee Slusher would be paid ninety-days' salary.  *See* Maj. Op. at 12.  Slusher also argues that Heritage's military leave policy required that it pay him the differential between his military pay and civilian salary.

No. 15-5256          *Slusher v. Shelbyville Hospital Corp., et al.*          Page 23

The majority rejects this argument on the same basis it rejects Slusher's § 4312 claim.  *See id.* at 12.  Because I disagree with the analysis of that claim, I disagree with the majority's analysis of the contract claim.  Nonetheless, I would affirm because Slusher has not countered Buckner's testimony that the provision does not apply to physicians.

For the reasons stated, I would reverse summary judgment in favor of Heritage on Slusher's unlawful discharge and discrimination claims and remand for further proceedings.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 15-5256

RICHARD SLUSHER, D.O.,

　　　　　Plaintiff - Appellant,

　v.

SHELBYVILLE HOSPITAL CORP., d/b/a
Heritage Medical Center; DAN BUCKNER,
individually,

　　　　　Defendants - Appellees.

```
┌─────────────────────────────┐
│           FILED             │
│        Oct 26, 2015         │
│   DEBORAH S. HUNT, Clerk    │
└─────────────────────────────┘
```

Before: MERRITT, McKEAGUE, and WHITE, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION WHEREOF, it is ORDERED that the district court's grant of summary judgment to the defendants is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk